UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MOLIERE DIMANCHE, JR.,

     Plaintiff,

v.                                       Case No. 5:10-cv-377-Oc-10TBS

LAKE COUNTY SHERIFF'S OFFICE, et al.,

     Defendants.

_____/

**ORDER**

This case is before the Court on Defendant Kelly Lang Cromwell's ("Cromwell's") Motion to Dismiss (Doc. 20, filed October 31, 2011) and Plaintiff Moliere Dimanche, Jr.'s ("Plaintiff's") Response to the Motion to Dismiss (Doc. 27, filed November 16, 2011).  After reviewing the pleadings submitted by both parties in support of their positions, the Court finds that Plaintiff has failed to state a claim against Defendant.  Accordingly, Cromwell's motion to dismiss is granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.**    **Claims**

Plaintiff, a prisoner in the State of Florida, filed this action pursuant to 42 U.S.C. § 1983, alleging claims against five defendants:  the Lake County Sheriff's Office, Assistant State Attorney Sara B. Smith, the Fifth Judicial Circuit Court in and for Lake County, Judge Mark A, Nacke, and Lake County Police Officer Kelly Lang Cromwell (Doc. 1 at 1).  This Court dismissed with prejudice all claims against the Lake County Sheriff's Office, Sara B. Smith, the Fifth Judicial Circuit Court, and Judge Nacke (Docs. 15, 16).  Cromwell is the only remaining defendant.

Plaintiff's claims against Cromwell stem from his actions surrounding Plaintiff's

December 4, 2007 arrest for dealing in stolen property in Lake County, Florida.  In particular, Plaintiff alleges that Cromwell conspired to deny him bail on the offense by improperly "pocketing" the arrest warrant "until he executed a scheme that would keep the Plaintiff incarcerated without a bond." (Doc. 1 at 9).  Plaintiff alleges that Cromwell activated the warrant at his own leisure "so that he could use the no-bond-status of the Orange County [violation of probation] to his own advantage in the Lake County case." (Doc. 1 at 10).  Plaintiff also alleges that Cromwell testified against Plaintiff in an Orange County case involving the same criminal activity, yet did nothing to prevent the re-prosecution of Plaintiff in Lake County (Doc. 1 at 12).

Plaintiff claims that his Eighth Amendment right against cruel and unusual punishment was violated by Cromwell's "unlawful conspiracy to deprive the Plaintiff of his right to post bond." (Doc. 1 at 8).  He also claims that his due process rights under the Fourteenth Amendment were violated "as he was deprived of liberty without due process of law." (Doc. 1 at 8). Plaintiff appears to raise a Fifth Amendment double jeopardy claim, arguing that Cromwell assisted in having him arrested twice for the same conduct (Doc. 1 at 11).  Plaintiff seeks a total of four million dollars in punitive damages and compensatory damages for mental anguish and pain and suffering.  Plaintiff seeks an additional two million dollars for the time spent improperly incarcerated in Lake County (Doc. 1 at 16).

## II.   Factual Background

The facts of this case, as derived from the complaint, the attachments to Plaintiff's reply, and the police report of the incident,[1] and taken in the light most favorable to Plaintiff,

---

[1]Although the police report was attached to Cromwell's motion to dismiss, rather than to the complaint, it is referred to both by number and throughout the complaint. *See e.g.* (Doc. 1 at 13) ("Detective Kelly Lang Cromwell outlined his entire malicious scheme in his Incident Report 01179071").  Documents submitted by a defendant with a motion to dismiss, rather than the plaintiff with the complaint, may be considered by the

are as follows:  On November 1, 2007,  Cromwell responded to a call from Sergeant Ron Patton advising him that two people were unloading copper wire from a U-Haul truck into a utility trailer in Tavares, Florida.  When Cromwell investigated, he observed Plaintiff in the driver's seat of the U-Haul.  The owner of the trailer advised Cromwell that he had purchased the copper wire from Plaintiff and Tomonte Harris.  When Cromwell asked Plaintiff where he had obtained the wire, he refused to answer.  Upon running a criminal history on Plaintiff and Harris, Cromwell learned that both were on felony probation in Orange County.  The copper wire was seized on the advice of the State Attorney's office, and Plaintiff abandoned the U-Haul and left on foot. (Doc. 20-1 at 2).  Later, the copper wire was positively identified as wire that had been stolen from a school construction site in Apopka, Florida in Orange County on October 31, 2007 (Doc. 22 at 13).

Cromwell spoke with the Apopka Police Department to advise them of the circumstances.  The Apopka police told Cromwell that they would attempt to obtain warrants on Plaintiff and Harris for the burglary and grand theft from the school because they were in possession of the stolen wire the day after the burglary, but they would wait to execute the warrants until the other agencies were ready to arrest the suspects.  Cromwell then contacted Plaintiff's probation officer who told him that Plaintiff's next appointment was scheduled for December 4, 2007 (Doc. 22 at 27; 20-1 at 18).

———————————

Court if the plaintiff refers to those documents in the complaint and they are central to the Plaintiff's claims. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  Moreover, if these documents contradict the general and conclusory allegations of the complaint, the documents govern. *Griffen Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).  The rationale is that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment.  Therefore, this Court may properly rely on the police report attached to Cromwell's motion to dismiss and dismissal is appropriate if the exhibit negates Plaintiff's claims. *Thompson v. Illinois Dept. Of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *accord Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

3

Cromwell obtained an arrest warrant for Plaintiff on the Lake County charge of dealing in stolen property, but he did not enter it into the FCIC/NCIC computer until the Apopka Police Department and the Orange County Sheriff's Office could "review this current investigation and develop any Probable Cause for the suspects so they can be arrested by all agencies at the same time to prevent the suspects from bonding, and taking flight." (Doc. 22 at 27).

On December 4, 2007, Cromwell went to Plaintiff's probation office at Plaintiff's scheduled appointment time.  When Plaintiff arrived, he was taken into custody by the Orlando Police Department on the Lake County charges and taken to the Orange County jail. Cromwell attempted to speak with Plaintiff at that time, but Plaintiff requested an attorney (Doc. 20-1 at 20).  Later that afternoon, an affidavit for violation of probation ("VOP")  was issued.  At the time, Plaintiff was attempting to arrange bail, but the VOP "made the bond futile." (Doc. 22 at 3).

Cromwell testified against Plaintiff on behalf of the state in the Orange County burglary and grand theft case (Doc. 1 at 12).  Plaintiff was found guilty of the grand theft charge (Doc. 1 at 12; Doc. 22 at 29).  In light of that conviction, Plaintiff was sentenced on the violation of probation (Doc. 1 at 11).  After resolving his cases in Orange County, Plaintiff was transported to the Lake County Detention Center to face charges for dealing in stolen property (Doc. 1 at 11).  After 147 days, Plaintiff, acting *pro se*, filed a motion for dismissal of the charge for dealing in stolen property based on double jeopardy grounds (Doc. 1 at 12).  Three days later, the state attorney filed a nolle prosequi against Plaintiff because under Florida law, Plaintiff could not be convicted for both grand theft and dealing in stolen property since the crimes involved the same property (Doc. 22 at 29).

III.   **Legal Standards**

    *a.*   ***Standards for Motions to Dismiss***

When considering a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89 (2007); *see also Christopher v. Harbury*, 536 U.S. 403, 406 (2002).   A complaint must contain a short and plain statement demonstrating an entitlement to relief, and the statement must "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2507 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (citations omitted).

Previously, the standard for a motion to dismiss provided that a complaint should not be dismissed for failure to state a claim unless it appeared beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   However, this standard has been retired in favor of a heightened requirement that the plaintiff supply "enough facts to state a claim for relief that is plausible on its face, rather than merely conceivable." *Huggins v. Marriott Ownership Resorts, Inc.*, 2008 WL 552590 at *2 (M.D. Fla. Feb. 27, 2008) (discussing *Twombly* in dismissing claims for breach of implied duty of good faith and fair dealing) (internal citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (holding that the Supreme Court decision in *Twombly* expounded the pleading standard for "all civil actions.").   Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545

(citations omitted).  Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545. However, in the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

**b.    Standards for Qualified Immunity**

Qualified immunity is not just a defense from liability; it is also an immunity from suit. "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To be entitled to qualified immunity, a defendant first must show that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. *See Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995).  A government official proves that he acted within the scope of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).[2]

Once the defendant makes this showing, the burden shifts to the Plaintiff to show that the defendant committed a violation of a constitutional right. The relevant inquiry on a motion to dismiss a § 1983 claim is whether, "[t]aken in the light most favorable to the party asserting

---

[2] The facts as alleged by Plaintiff are clear that Cromwell was acting in the scope of his discretionary authority when Plaintiff was arrested and when he testified against Plaintiff at trial. Plaintiff argues that Cromwell "crossed jurisdictional lines" when he traveled to Orange County to witness Plaintiff's arrest.  Under Florida law, an officer may conduct a lawful investigation outside his territorial jurisdiction if the subject matter of the investigation originated in his own jurisdiction. *State v. Chapman*, 376 So.2d 262 (Fla. 3d DCA 1979); *Parker v. State*, 362 So.2d 1033 (Fla. 1st DCA 1978).

the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If so, "the next, sequential step is to ask whether the right was clearly established" at the time of the allegedly wrongful conduct. *Id.*  For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Although the exact action in question need not previously have been held to be unlawful, in the light of pre-existing law, the unlawfulness must be apparent.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

## IV.   Analysis

### a.     The Eighth Amendment

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII.  Plaintiff alleges that his Eighth Amendment right against cruel and unusual punishment was violated by Cromwell's unlawful conspiracy to deprive him of his right to post bond and by his improper arrest and imprisonment (Doc. 1 at 8).   The impetus of this allegation is Plaintiff's inferred, but unarticulated, belief that had he been promptly arrested on the Lake County charges, he would have been able to post bond for his Lake County arrest and would not have been re-arrested for violation of probation.   Whether or not this belief is accurate is irrelevant to the instant analysis because Plaintiff has not alleged a sufficient constitutional violation so as to defeat qualified immunity regarding Cromwell's failure to immediately execute the arrest warrant.

First, Plaintiff had no constitutional right to be arrested immediately upon the issuance of the arrest warrant. *See United States v. Berkowitz*, 429 F.2d 921, 926 (1st Cir. 1970) ("We

7

are unaware of any right of a defendant to be arrested at a particular time."); *United States v. Joines*, 258 F.2d 471, 472-73 (3rd Cir. 1958) ("[O]rdinarily there is no legal requirement that a warrant of arrest must be executed immediately or at the first opportunity. While its execution should not be unreasonably delayed, there may be perfectly valid reasons why further investigation should be made before the drastic step is taken of arresting a citizen on a criminal charge. Certainly there is no constitutional right to be arrested promptly or otherwise.")(internal citations omitted); *United States v. Toro*, 840 F.2d 1221, 1233 (5th Cir.1988) ("[L]aw enforcement officials are under no constitutional duty to terminate a criminal investigation the moment they have an arrest warrant in their hands."). Because Plaintiff had no constitutional right to be promptly arrested after the issuance of the Lake County warrant, Cromwell could not have unlawfully "conspired" to deprive him of such right.

Next, Plaintiff appears to believe that by delaying execution of the Lake County warrant, Cromwell was somehow able "to invoke a no-bond-status into" the Lake County charge (Doc. 22 at 9). However, it is clear from the documents attached to the pleadings that Plaintiff was not denied bond on his Lake County arrest for dealing in stolen property (Doc. 22 at 23) (fixing appearance bond on the Lake County arrest at $20,000). Rather, Plaintiff was denied bail on his *subsequent* arrest for violation of probation. Even had Plaintiff posted bond after the Lake County arrest, such bond would not have immunized him from jail on his arrest for violation of probation. A violation of probation is a separate and distinct charge which may result in incarceration. *Davenport v. State*, 664 So. 2d 323, 325 (Fla 1st DCA 1995). Moreover, when a defendant violates probation, that defendant is not in the same position as a defendant arrested for the commission of a crime for which he or she is deemed innocent until proven guilty beyond a reasonable doubt. As such, there is no constitutional right to bail

8

pending a revocation of probation. *See Genung v. Nuckolls*, 292 So.2d 587 (Fla.1974); *McCarthy v. Jenne*, 861 So.2d 99 (Fla. 4th DCA 2003).[3]   Cromwell did not violate Plaintiff's constitutional rights by  invoking a "no-bond status" on his Lake County arrest.

Finally, it is unclear why Plaintiff believes that, had he been arrested sooner, no affidavit for violation of probation would have issued.  Plaintiff was on probation for a felony offense, and in direct violation of the terms of his probation, he was arrested for another felony offense.[4]   Under Florida law:

> Whenever within the period of probation . . . there are reasonable grounds to believe that a probationer . . . has violated his or her probation . . . in a material respect, any law enforcement officer who is aware of the probationary . . . status of the probationer . . . or any parole or probation supervisor may arrest or request any county or municipal law enforcement officer to arrest such probationer . . . without warrant wherever found and return him or her to the court granting such probation or community control.

Florida Statute § 948.06(1)(a) (2007).  Only moments after making contact with Plaintiff on November 1, 2007, Cromwell became aware that Plaintiff was on felony probation in Orange County (Doc. 20-1 at 2).  However, Cromwell did not seek an arrest warrant for Plaintiff until November 7, 2007, after the copper wire seized from Plaintiff was positively identified as the wire stolen from a school construction site in Orange County (Doc. 20-1 at 10).  Plaintiff was not arrested until December 4, 2007 because Cromwell sought to coordinate Plaintiff's arrest with the other agencies involved (Doc. 20-1 at 10).  Even had Plaintiff been arrested immediately upon the issuance of the Lake County warrant, Cromwell could have sought

---

[3]Plaintiff's underlying offense for which he was on probation is not clear from the face of the complaint. However, under Florida law, certain offenders, such as violent felony offenders "of special concern" are not entitled to bail after an arrest for violation of probation. *See* Fla. Stat. § 948.06(4) (where probationer is arrested, taken before a court in the county in which he is arrested and denies a violation of probation, the court may release the probationer with or without bail to await further hearing).

[4]It is immaterial whether the violation of probation charge was based on the Lake County arrest for dealing in stolen property or the Orange County arrest for burglary of the school in Apopka.

Plaintiff's arrest for violation of probation at that time pursuant Florida Statute § 948.06. Indeed, Plaintiff alleges that soon after his arrest on the Lake County charges, Cromwell insisted to the Orlando Police Department that a violation of probation affidavit be issued, making Plaintiff's attempt to arrange bond "futile." (Doc. 22 at 3).   Cromwell was clearly entitled to alert the Orange County authorities of Plaintiff's arrest on the Lake County warrant and to seek his subsequent arrest for violation of probation.   Accordingly, Cromwell did not violate Plaintiff's constitutional rights by alerting the Orange County authorities of Plaintiff's arrest on the Lake County charges or by urging his arrest for violation of probation.   Plaintiff's Eighth Amendment claims against Cromwell fail as a matter of law because Plaintiff cannot show an underlying constitutional violation, and Cromwell is entitled to qualified immunity on these claims.

### b.        The Fourteenth Amendment

Plaintiff claims that his Fourteenth Amendment rights were violated because he was deprived of liberty without due process of law (Doc. 1 at 8).   Plaintiff makes no specific allegations to support this claim, and to the extent Plaintiff insists that he was denied due process because he did not receive bail after the Lake County arrest, the claim is meritless. *See* Discussion IV(a), *supra*.   Rather, Plaintiff's claims most closely resemble a Fourth Amendment claim for malicious prosecution in that Plaintiff alleges that Cromwell illegally asked for identification at their first encounter (Doc. 1 at 9) and subsequently plotted to infringe "upon Plaintiff's Constitutional protection against Double Jeopardy and Plaintiff's right to due process of law by detailing how he manipulated the bench warrant, conspired with multiple agencies to pursue multiple prosecutions for the same incident, and 'prevent' the Plaintiff from bonding in a non-capital case." (Doc. 22 at 4).   To establish a federal malicious prosecution

10

claim under § 1983, Plaintiff must prove: (1) a violation of his Fourth Amendment right to be free from unreasonable seizures; and (2) the elements of the common law tort of malicious prosecution. *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004).

Plaintiff alleges that Cromwell violated the Fourth Amendment by asking for identification at the November 1, 2007 investigative stop without reading a *Miranda*[5] warning (Doc. 1 at 9). The right to *Miranda* warnings attaches only when custodial interrogation begins. *Miranda*, 384 U.S. at 479.   It is clear from the pleadings that Cromwell's initial contact with Plaintiff was not an arrest.  Rather, Cromwell merely approached Plaintiff after receiving a call from a police officer that two people in a U-Haul truck were unloading copper wire onto a utility trailer, and the purchaser of the copper wire stated that he obtained the wire from Plaintiff (Doc. 20-1 at 2). "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002).  If a reasonable person would feel free to terminate the encounter, then he or she has not been seized. *Id.*  A Fourth Amendment seizure occurs "only when, by means of physical force or a show of authority, a person's freedom of movement is restrained." *United States v. Perez*, 443 F.3d at 772, 778 (11th Cir. 2006). (quotation and alteration omitted).  Moreover, even when a police officer has no basis for suspecting an individual, he may pose questions and ask for identification, provided he does not induce cooperation by coercive means. *Drayton*, 536 U.S. at 201.  Plaintiff clearly felt free to terminate his encounter with Cromwell because he did so, leaving on foot and abandoning the

---

[5]*Miranda v. Arizona*, 384 U.S. 436 (1966) (statements made in response to interrogation by a defendant in police custody admissible at trial only if prosecution can show that defendant was informed of certain rights prior to questioning).

U-Haul truck (Doc. 20-1 at 2).  Because Plaintiff cannot establish a violation of the Fourth Amendment, he has not stated a claim for malicious prosecution.

Plaintiff's Fourteenth and Fourth Amendment claims against Cromwell fail as a matter of law because Plaintiff cannot show an underlying constitutional violation, and Cromwell is entitled to qualified immunity on these claims.

### c.      The Fifth Amendment

The Double Jeopardy Clause of the Fifth Amendment protects defendants from repeated prosecutions or multiple punishments for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606 (1976). Plaintiff alleges that Cromwell violated his Fifth Amendment right against double jeopardy by seeking to execute the Lake County arrest warrant for dealing in stolen property and the Orange County warrant for burglary on the same day (Doc. 22 at 9).

Plaintiff was charged in Orange County with burglary of a construction site and theft of copper wire (Doc. 22 at 29).  At trial, Plaintiff was not convicted of burglary, but only of the lesser included offense of grand theft (Doc. 1 at 11).  After Plaintiff's trial in Orange County, he was brought to Lake County to face charges for dealing in stolen property (Doc. 22 at 21). Plaintiff moved for dismissal based on double jeopardy grounds, and his motion was granted (Doc. 1 at 12).  Plaintiff  is correct that under Florida law, convictions for both grand theft and dealing in stolen property violate double jeopardy when both offenses arise from the same scheme or course of conduct. *Coro v. State*, 916 So. 2d 44, 45 (Fla. 3d DCA 2005) (convictions for grand theft and dealing in stolen property violate double jeopardy if they relate to the same property).  However, Plaintiff was arrested for <u>burglary</u> and dealing in stolen property (Doc. 20-1 at 10).  Convictions for both of these offenses are not barred by double jeopardy. *See Ridley v. State*, 407 So. 2d 1000, 1002 (Fla. 5th DCA 1981) (affirming

12

convictions and sentences for both burglary and dealing in stolen property); *Naughton v. State,* 889 So. 2d 931 (Fla. 4th DCA 2004) (same).

Because separate arrests for burglary and dealing in stolen property do not implicate double jeopardy concerns, Cromwell did not violate Plaintiff's Fifth Amendment rights by seeking to execute separate warrants on these charges. Moreover, Plaintiff's arrests were not illegal. There are no allegations that Cromwell lied to the prosecutor to ensure Plaintiff's arrest, and Cromwell, a police officer, was not responsible for the continuation of Plaintiff's prosecution. Once a defendant is arrested and substantial evidence of his guilt comes to light, the police "can do little or nothing to stop further proceedings. Holding the police responsible for damage due to these later proceedings makes little sense." *Barts v. Joyner*, 865 F.2d 1187 (11th Cir. 1989). The 147-day delay between Plaintiff's transport to the Lake County Detention Center and the State's announcement of nolle prosequi, while regrettable, was not caused by Cromwell and does not constitute a cognizable claim against him. *See Hartman v. Moore*, 547 U.S. 250, 263 (2006) (evidence of police animus does not necessarily show that the police induced the actions of a prosecutor); *Barts*, 865 F.2d at 1195 (explaining that "[t]he intervening acts of the prosecutor, grand jury, judge and jury-assuming that these court officials acted without malice that caused them to abuse their powers-each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen."). Plaintiff's Fifth Amendment claim against Cromwell fails as a matter of law because Plaintiff cannot show an underlying constitutional violation, and Cromwell is entitled to qualified immunity on this claim.

## V.    Conclusion

The Motion to Dismiss filed by Defendant Kelly Lang Cromwell is **GRANTED**.  Because Plaintiff pleads facts which are clearly inconsistent with a finding of liability against Cromwell, the claims are dismissed with prejudice. *See Butler v. Prison Health Services, Inc.*, 294 Fed. Appx. 497, 500 (11th Cir.  2008) ("The district court . . .need not allow an amendment . . . where amendment would be futile.") (citations and quotes omitted).

Accordingly, it is hereby **ORDERED**:

1.    Defendant Kelly Lang Cromwell's Motion to Dismiss (Doc. 20) is **GRANTED**;

2.    Plaintiff's claims are **DISMISSED** with prejudice; and

3. The Clerk of the Court is directed to close this case and enter judgment accordingly.

**DONE AND ORDERED** at Ocala, Florida, this 30th day of April, 2012.

UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-4 4/23
Moliere Dimanche, Jr.

14